## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

| | | |
|---|---|---|
| **TRACY PORTER,** | ) | |
| | ) | |
| | ) | **CIVIL ACTION NO:** |
| **Plaintiff,** | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **JOHNSON & JOHNSON, INC. t/d/b/a** | ) | |
| **ETHICON, INC.** | ) | |
| | ) | |
| Serve: Registered Agent | ) | |
| Registered Agent Solutions, Inc. | ) | |
| 7288 Hanover Green Drive | ) | |
| Mechanicsville, VA 23111-0000 | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT

Plaintiff, Tracy Porter ("Porter" or "Plaintiff"), by counsel, brings this action against Defendants Johnson & Johnson, Inc., t/d/b/a Ethicon, Inc. ("Ethicon") for damages and alleges as follows:

### THE PARTIES

1. Plaintiff Porter is a natural person, and at all times relevant hereto was, a citizen of the Commonwealth of Virginia, residing in the town of Suffolk, Virginia.

2. Defendant Johnson & Johnson, Inc. t/d/b/a Ethicon, Inc. (hereinafter "Ethicon") is a corporation conducting business in the Commonwealth of Virginia.

### JURISDICTION AND VENUE

3. This court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §2000e-5.

4.      Venue properly lies in this Court because the controversy involves Defendant's behavior at Plaintiff's place of employment, in the Eastern District of Virginia.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      Prior to instituting this suit, Johnson timely filed an administrative claim with the Norfolk Office of the Equal Employment Opportunity Commission (EEOC) on January 7, 2020.

6.      The EEOC failed to resolve the claim and issued a right-to-sue letter dated January 26, 2021.  A true and correct copy of the right-to-sue letter is attached to this complaint and incorporated by reference as Exhibits "A".  Plaintiff has filed her complaint within 90 days from the date she received her notices authorizing the right to bring this action.

## STATEMENT OF FACTS

7.      On or about October 25, 2004, Ethicon hired Porter as a Sales Representative.

8.      On or about January 5, 2015, Porter relocated to Virginia Beach and took on the position of Bariatric/Thoracic Sales Representative.  In so doing, Porter began reporting to a new immediate supervisor, Joseph Boni ("Boni") – a white male.

9.      As a Bariactric/Thoracic Sales Representative, Porter's primary function was selling medical products, including powered endocutters (a medical device used to cut and staple tissue in surgical procedures), to health care providers in her specific sales territory.

10.     Porter was specifically charged with expanding the sales of Ethicon products for Bariatric and Thoracic procedures.

11.     Beginning in February 2015 and continuing until early 2019, Porter's immediate supervisor, Boni, exhibited blatant favoritism toward Porter's male colleagues, Kevin Thompson ("Thompson") and Greg Dail ("Dail").  Both Thompson and Dail essentially shared the same position, goals, and responsibilities as Porter.

12. Specifically, Boni favored Porter's male counterparts (Thompson and Dail) in the following ways:

   a. judging their work product and accomplishments in a more permissive or liberal manner than Porter's work product and accomplishments.

   b. providing Porter's male counterparts with additional resources necessary to accomplish their assigned work goals and projects;

   c. mandating tougher, less favorable assignments to Porter than her male counterparts; and

   d. assigning a more flexible work schedule to Porter's male counterparts.

13. Boni made numerous comments to Porter and her coworkers about Porter being "a single woman with no children." Boni would routinely assign Porter to early morning and weekend assignments (such as setting up convention presentations) that her male counterparts did not desire and claimed would interfere with their family-related responsibilities. Despite the additional work and effort these assignments required from Porter, Boni never provided any Porter credit (economic or emotional).

14. Boni also provided Porter's male counterparts a more flexible schedule because they were dealing with familial responsibilities (*e.g.,* children's sporting events, lessons and other family outings). Boni's expectations toward Porter and her more rigid work hours and responsibilities were drastically different than his expectations toward her male counterparts.

15. Porter raised these issues with Boni throughout her period of employment under his supervision only to be ignored.

16. Boni often refused to assign replacement workers to Porter's projects when she was out on sick leave – unlike his behavior towards her male coworkers.

17. Did not generally require Ms. Porter's male counterparts to cover her accounts when she was out on leave.

18. In 2017, Porter again expressed her concerns to Boni that he was favoriting her male counterparts. As a result, Boni further scrutinized and ostracized Porter. Boni would often, deny specific instructions to Porter -- requiring her to call other colleagues to obtain essential information in order to perform her duties as assigned by Boni.

19. On January 9, 2017, Porter informed Boni that she had broken her arm and would require FMLA leave. Boni openly expressed frustration with Porter's request for leave.

20. On or about February 1, 2017, Porter returned to work following her FMLA leave. Boni refused to honor her doctor's request for Porter to be placed on light duty.

21. In or around July 2017, Boni continued his harassment of Porter. Following her return to work from a hysterectomy, Boni assigned Porter to attend an excessive number of work-related events falling outsider or regularly scheduled work hours -- during the evenings and on weekends. Boni did not assign Porter's male counterparts to such events.

22. In fall 2018, Porter missed work due to a sinuplasty surgery. Accordingly, she requested and was approved FMLA leave. Immediately upon Porter's return to work Boni stepped-up his campaign to harass and unfairly over-scrutinize Porter – essentially retaliating against Ms. Porter by showing displeasure with her in general and her overall work product.

23. Porter made a formal complaint to Boni's immediate supervisor, David Krall, Defendant's Regional Manager, about Boni's unfair treatment of her because of her gender and use of FMLA leave.

24. In March 2019, Boni further retaliated against Porter by unjustifiably holding her responsible for a loss of sales, caused by Defendant's management decisions – matters well outside of Porter's control.

25. In March 2019, Boni fired Porter claiming she was failing to meet company expectations.

## COUNT I
## Gender Discrimination in Violation of Title VII
(42 USC 2000e *et seq.*)

26. Plaintiff repeats and realleges each and every Paragraph of this Complaint as though fully set forth herein.

27. At all times relevant to this complaint, Plaintiff was qualified for her duties and performed them in no less than an excellent or satisfactory manner.

28. Defendant committed gender discrimination against Plaintiff by treating her differently than her male co-workers that were similarly situated coworkers by the conduct described herein.

29. Defendant discriminated against Plaintiff by subjecting her to disparate treatment as well as terms and conditions of her employment due to her gender.

30. Defendant's conduct has been intentional, deliberate, willful, wanton, malicious, reckless, and in conscious disregard of Plaintiff's rights.

31. As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered monetary and non-monetary damages including loss of back pay, loss of front pay, emotional distress, reputational harm, embarrassment, humiliation and loss of enjoyment of life.

32. Plaintiff is entitled to recover her reasonable attorney fees, costs and expert witness expenses pursuant to Title VII.

33. Due to the severity of Defendant's conduct, Plaintiff is also entitled to punitive damages.

## COUNT II
**Unlawful Retaliation in Violation of FMLA**
(29 U.S.C. § 2601 *et seq.*)

34. Plaintiff repeats and realleges each and every Paragraph of this Complaint as though fully set forth herein.

35. Defendant qualifies as an "employer" as defined in the FMLA, 29 U.S.C. § 2611(4), and Plaintiff is an "eligible employee" as defined in the FMLA, 29 U.S.C. § 2611(2).

36. The FMLA, 29 U.S.C. Section 2612(a)(1), provides: [A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period. . ."

37. Plaintiff was eligible for FMLA leave and appropriately and timely requested FMLA leave in a manner which complied with 29 U.S.C. Sections 2612, and 2613(a) and (b).

38. Although Plaintiff was entitled to use FMLA leave for absences and although the company had initially approved Plaintiff's request for leave under the FMLA so as to cover such absences, after Plaintiff applied for and used such leave for such periods of time, Defendant terminated Plaintiff's employment because of her use of such leave.

39. The reason for the termination is not well supported by the facts as to Plaintiff's performance / record of employment; particularly when viewed in comparison with that of her coworkers who did not request FMLA leave.

40. Plaintiff alleges the Defendant's action constitutes interference with her rights under the FMLA and is retaliatory in nature for her using FMLA.

41. As a direct and proximate result of Defendant's unlawful actions in this regard, Plaintiff was deprived of her right to FMLA leave; was denied permanent employment with Defendant; and she has sustained and will continue to sustain medical costs, lost wages and/or diminished earnings capacity, among other things.

42. Plaintiff is entitled to recover her reasonable attorney fees, costs and expert witness expenses.

## JURY DEMAND

**Plaintiff demands a jury trial.**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Tracy Porter, prays for entry of judgment in favor of Plaintiff and against Defendant Johnson & Johnson, Inc., t/d/b/a Ethicon, Inc., in the form of the following relief:

a. Back Pay;

b. Front Pay;

c. Compensatory Damages (including all lost benefits);

d. Punitive Damages;

e. Attorneys' fees and court costs associated with this suit; and

f. Other such relief as may be appropriate to effectuate the purpose of justice.

Date: March 17, 2021                        Respectfully submitted,


                                            TRACY PORTER

                                            __/s/__Todd M. Gaynor_____
                                            Todd M. Gaynor, Esquire
                                            Virginia Bar No.: 47742
                                            GAYNOR LAW CENTER, P.C.
                                            440 Monticello Avenue, Suite 1800
                                            Norfolk, Virginia 23510
                                            PH: (757) 828-3739
                                            FX: (75) 257-3674
                                            EM: tgaynor@gaynorlawcenter.com
                                            *Counsel for Plaintiff*